F I L E D
CLERK OF COURT

2026 MAY 29 PM 2: 11

SUPERIOR COURT
OF GUAM

## IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| PEOPLE OF GUAM, | ) | CRIMINAL CASE NO. CM0341-25 |
| | ) | |
| vs. | ) | |
| | ) | DECISION AND ORDER |
| | ) | DENYING DEFENDANT'S |
| NERI BOY JR. MENO TAPAR, | ) | MOTION TO EXCLUDE EVIDENCE |
| DOB: 10/31/1989, | ) | UNDER GRE 402, 403 AND 901 |
| | ) | |
| Defendant. | ) | |
| | ) | |

### A. INTRODUCTION

This matter came before the Honorable Judge Maria T. Cenzon for a hearing on Defendant Neri Boy Jr. Meno Tapar's ("Defendant") Motion In Limine To Exclude Evidence Based on GRE 402, and 403, and 901(a). Defendant is represented by Assistant Alternate Public Defender Shinju Flynn. Assistant Attorney General Valerie Nuesa represents the People. All parties were present at the hearing in person.

Following the hearing on the Motion, the court took the matter under advisement pursuant to Supreme Court of Guam Administrative Rule 06-001 and CVR 7.1(e)(6)(A) of the Local Rules of the Superior Court of Guam. After reviewing the Parties' written briefs and the record on file with the court, the arguments presented at the Motion Hearing, and the applicable statutes and case law, the court now issues this Decision and Order ruling on the Motion and DENYING Defendant's Motion, for the reasons set forth herein.

## B. RELEVANT FACTS

The relevant facts are largely derived from the Affidavit of Probable Cause accompanying the Magistrate's Complaint filed in this case on September 24, 2025, and supplemented by the representations made in the pleadings submitted and during the hearing of this matter. *Magistrate's Complaint* (Sep. 24, 2025); *Aff'd. Probable Cause* (Sep. 24, 2025); *Minutes of 2/4/26 Hrg. on Mot. In Limine to Exclude Evidence* at 9:38:13 AM to 9:59:03 AM (Feb. 4, 2026).

On September 22, 2025, Officer(s) from the Guam Police Department responded to an assault complaint in Yigo. At the scene, the officers interviewed the complaining witness, EUGENE C. FEBRE ("Victim"). The Victim reported that while riding his bicycle, he was approached by a dog owned by NERI BOY JR MENOTAPAR("Defendant"). The Victim was concerned that the dog would continue to chase him if he continued forward on his bicycle because the dog continued to approach the Victim. *People's Opp.* at 2. After alighting from his bicycle, the Victim told the Defendant to leash his dog, and placed his bicycle between himself and the dog. *Id.* Suddenly, the Defendant's dog attacked the Victim, biting him on the shoulder. Instead of coming to the Victim's aid and controlling his dog, the Defendant then began punching the Victim several times on the forehead. *Id.* Guam Police Officers responding to the complaint noted the Victim's visible injuries, including multiple contusions to the forehead, multiple lacerations, and puncture wounds consistent with an animal attack. *Aff'd.*

On September 24, 2025, Defendant was charged with Assault (As a Misdemeanor), in violation of 9 GCA § 19.30(a)(1) for "recklessly causing or attempting to cause bodily injury" to Eugene Febre. *Magistrate's Complaint* (Sep. 24, 2025). As part of discovery, the People

provided the Defendant with photographs purportedly showing the Defendant's injuries sustained during the incident, including the dog bites, and which the People intend to produce during the trial of this matter.

## C.    DEFENDANT'S ARGUMENT

Defendant argues that the photographs of the Victim's dog bite injuries are irrelevant under Rule 402 of the Guam Rules of Evidence because they are "outside the scope of the assault charge against Mr. Tapar." *Mot. at 2*. Defendant posits that, under the relevant charging statute of assault, 9 GCA § 19.30(a)(1), "A *person* is guilty of assault if *he* recklessly causes or attempts to cause bodily injury to another." *Id.* (citing to 9 GCA § 19.30(a)(1))(emphasis in original)). In short, Defendant argues that the *dog* caused the injury to the Victim, and, by the plain language of the statute, the action of the dog does not satisfy the requisite element that Tapar *himself* caused the injury (the puncture wounds from the dog bites) to the Victim.

In the alternative, if the Court finds that the photographs of the dog bite wounds are relevant, Defendant argues that they are prejudicial under GRE 403 "as it would mislead and confuse the jurors over injuries he is not charged with causing." *Mot.* at 3. Defendant complains that the dog bite photos "highlight the severity of the alleged victim's injuries caused by a dog, not the Defendant." *Id.* (citing *People v. Pinaula*, 2025 Guam 6 ¶ 19). The Defendant also contests the authenticity of the photographs under GRE 901.

## D. PEOPLE'S OPPOSITION

The People Oppose the Motion to Exclude or Suppress the Evidence of the photographs illustrating the Victim's injuries from the dog bites on the following grounds: (1) the motion is untimely, as it was filed after the motion cutoff deadline of December 10, 2025, and after he

asserted his right to a speedy trial under 8 GCA § 80.60; (2) Defendant is criminally liable for the dog bite injuries under the Assault statute and under the applicable provisions of law imposing civil liability for negligently causing injury to another, which, when read together form the basis of Defendant's criminal liability. *Opp'n.* at pp. 3-5.

## E. LEGAL DISCUSSION

### 1. Relevant Law.

GRE 402 allows all relevant evidence to be admitted unless otherwise excluded by the U.S. Constitution, the Organic Act, the laws of Guam, or another rule of evidence. *People v. Palacios,* 2023 Guam 5 ¶ 13 (Guam June 22, 2023)(citing *People v. Fisher*, 2001 Guam 2 ¶ 15 (quoting *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000)). Evidence is relevant if it tends to make a fact that is consequential to the action more or less probable than it would be without the evidence. GRE 401. Relevant evidence, however, may be excluded by the court if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasted time, or needlessly cumulative evidence. GRE 403. A trial court's Rule 403 determinations are reviewed with "considerable deference." *Palacios* at ¶13.

Defendant has been charged in this case with Assault under 9 GCA § 19.30(a)(1) for "either recklessly caus[ing] or attempt[ing] to cause bodily injury to another." Contrary to Defendant's assertion, this statute does not require that the defendant personally inflict the injury; rather, it criminalizes *reckless conduct* that causes bodily injury. The term "reckless" is defined under 9 GCA § 4.30(c) as follows:

A person acts recklessly, or is reckless, with respect to attendant circumstances or the result of *his conduct* when he acts in awareness of a substantial risk that the circumstances exist or that *his conduct* will cause the result and his disregard is unjustifiable and constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation.

See also, *People v. A-Last Amanto Simiron*, 2021 Guam 16 ¶ 42 ("the *act* of removing one's awareness of a risk by means of self-induced intoxication is ... synonymous with the conscious disregard of risk")(emphasis added). Importantly, in Guam, a defendant's subjective awareness of the reckless nature of his conduct is sufficient but not necessary for conviction, as "[c]onduct which a reasonable person, in similar circumstances, would recognize as reckless will suffice as well." *People v. Chin Song*, 2012 Guam 21 ¶ 48. Thus, the prosecution need not establish direct proof of Tapar's state of mind but may satisfy its burden of proof by circumstantial evidence inferred from the particular facts and circumstances of this case as well as what risk a reasonable person would be aware of under the circumstances.[1]

Thus, the Court considers whether the dog attack and Defendant's alleged refusal to restrain him after the Victim pleaded with him to do so constitutes the "reckless conduct" which is an element of the offense of Assault.

## 2. The Dog Attack is Attributable to the Defendant Under the Assault Charge.

The dog bite injuries can be imputed to the Defendant as part of the assault charge under 9 GCA § 19.30(a)(1). Although this is a question of first impression in this jurisdiction, other courts addressing the question similarly have held that a dog owner may be held criminally

---

[1] In *Song*, such evidence included testimony that the defendant was smirking after the incident, after the victim was rendered immediately unconscious after Song punched him, and the Guam Supreme Court held that it is common knowledge that head injuries, even those delivered by a single blow, could result in death.

liable for involuntary manslaughter for a death caused by his dog mauling his victim, even if the Defendant was not at home when the attack occurred.[2]

In a case factually similar to the instant matter, *People v. Frazier*, 173 Cal.App.4th 613, 92 Cal.Rptr.3d 794 (Cal. Ct. App. 2025), after the defendant commanded a dog to attack the victim in that case, she was charged with and subsequently convicted of assault by means of force likely to produce great bodily injury under a California statute with an enhancement sentence for "personally inflicting great bodily injury on the victim." *Id.* Challenging her conviction and the sentence enhancement,[3] the defendant argued that she did not *personally* cause the injury because it was the dog that actually attacked and injured the victim. *Id.* at pp. 616 - 617.

Rejecting this argument, the California court reasoned as follows:

> We recognize the common tendency to anthropomorphize animals, especially beloved pet dogs. Though we might give a dog a name and ascribe a certain personality to the animal, the law does not recognize dogs as having the mental state that can incur criminal liability. (See *People v. Knoller* (2007) 41 Cal.4th 139, 147–148, 158, 59 Cal.Rptr.3d 157, 158 P.3d 731 [holding that implied malice supports a second-degree murder conviction of a person who consciously disregards the natural and probable consequences of keeping dogs that endangered the life of another person]; 1 Torcia, Wharton's Criminal Law (15th ed.1993), § 27, at pp. 166–167 [noting that the Model Penal Code recognizes that it is persons who can form the requisite mental states for criminal culpability].)

---

[2] "Despite the physical ability to commit vicious and violent acts, dogs do not possess the legal ability to commit crimes." *People v. Henderson*, 76 Cal.App.4th 453, 470, 90 Cal.Rptr.2d 450 (Cal.Ct.App.4th 1999)(affirming conviction of a person for assault with a deadly weapon in the form of dogs who were prompted by defendant in that case to be in an agitated and ready-to-attack state; no liability was imputed to the dogs that were the instrumentality of the assault.).

[3] The sentence enhancement was imposed under a California law, which provides: "Any person who *personally* inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." *Frazier* at p. 616 – 617 (Italics added in original.).

> *Despite the physical ability to commit vicious and violent acts, dogs do not possess the legal ability to commit crimes.* (See *People v. Henderson* (1999) 76 Cal.App.4th 453, 470, 90 Cal.Rptr.2d 450 [affirming conviction of a person for assault with a deadly weapon in the form of dogs who were prompted by defendant in that case to be in an agitated and ready-to-attack state; no liability was imputed to the dogs that were the instrumentality of the assault].) *As a consequence, a dog cannot be a principal to a crime.* Because Papas the dog could not have been a principal, defendant could not have been an aider and abettor to the attack. For this reason, *Cole's* holding (supra, 31 Cal.3d 568, 183 Cal.Rptr. 350, 645 P.2d 1182) that aiders and abettors cannot qualify for the sentence enhancement under section 12022.7 does not apply here.
>
> *A dog may be the instrumentality of an attack causing great bodily injury just as a loaded gun or knife can be.* In *People v. Nealis* (1991) 232 Cal.App.3d Supp. 1, 283 Cal.Rptr. 376 (Nealis ), at page 5, 283 Cal.Rptr. 376, the court held that a dog can be a deadly weapon or instrument. *Nealis* offers facts similar to this case in that the defendant ordered her dog to attack the victim by instructing it to "[g]et her! Get her!" (Id. at p. 3, 283 Cal.Rptr. 376.) The dog obeyed the command and bit the victim in the leg. (Ibid.) *Recognizing that "[a]ssault with a deadly weapon is an intentional act," the court had no difficulty in affirming the defendant's conviction despite the fact that it was the dog that caused the physical injury.* (Id. at p. 7, fn. 3, 283 Cal.Rptr. 376).[4]

The Court adopts the reasoning of the courts in these jurisdictions and finds that Defendant may be found liable for the injuries the victim sustained as a result of the dog attack under the Assault charge.

### 3. The Photographs of the Dog Bite Injuries are Relevant and Do Not Result in Substantial Prejudice to the Defendant.

Because Defendant may be liable for the injuries to the Victim from the dog attack, the Court finds that the photographs of the Victim's injuries sought to be excluded are relevant under Rule 402 and their admission during trial does not result in unfair prejudice to the

---

[4] *Frazier* at p. 618 (emphasis added).

Defendant under Rule 403. In other jurisdictions, pre-autopsy photographs of the victim showing the extensive injuries and ultimate death caused by the dogs were found to have been relevant, and their admissibility *did not* result in an unfair prejudice that substantially outweighed their probative value.

In *State v. Collins*, 409 S.C. 524, 763 S.E.2d 22 (S.C. 2014), the Supreme Court of South Carolina reversed the appellate court's ruling that the admission of pre-autopsy photographs of the victim – a ten-year old boy who had been mauled and partially eaten by defendant's untethered dogs – was unfairly prejudicial to the defendant when compared with its probative value. In that case, after the young victim had not returned home by dinnertime, his mother and police scoured the neighborhood searching for him. Shortly after 10:00 p.m., the boy's body was found on the ground in the defendant's yard "tore to pieces," with a group of dogs nearby. *Collins* at 528. It was revealed that Collins had six dogs on his premises, all of which were unrestrained, and he had no fence or dog pens. Additionally, several of the dogs had bite wounds on their shoulders, indicative of dog fighting. *Id.* An autopsy confirmed that the boy died of extensive traumatic injury secondary to being mauled by dogs. *Id.* Collins was indicted for involuntary manslaughter and three counts of owning a dangerous animal and allowing it to be confined, resulting in the mauling death of the victim. He was convicted of all charges. *Id.* at 529.

To establish Collins's guilt for involuntary manslaughter under the South Carolina Code, the prosecution was required to establish that he was criminally negligent, defined as "the reckless disregard of the safety of others." *S.C. Code Ann.* § 16-3-60 (1976). The State must show that "the defendant killed another person without malice and unintentionally while the

defendant was engaged in either (1) an unlawful activity not amounting to a felony and not naturally tending to cause death or great bodily harm, or (2) a lawful activity with a reckless disregard of the safety of others." *Id.* at 531 (citing *State v. Crosby*, 355 S.C. 47, 584 S.E.2d 110 (2003); *State v. Tyler*, 348 S.C. 526, 560 S.E.2d 888 (2002)).

In support of its case against Collins, the prosecution introduced evidence of the dogs' prior acts of aggression towards people in the neighborhood, several occurring while the defendant stood by and took no action to restrain the dogs. In order to establish Collins's criminal negligence as well as other elements of the offenses charged, the State offered a group of seven photographs taken by the forensic pathologist before he began the autopsy of the victim. The forensic pathologist explained that, although he normally did not take autopsy photos, "in his years of experience he had 'never seen an attack by animals of this type, [so he] actually left the autopsy and went [to] his home and brought [his] camera back and took pictures *for [ ] documentation purposes.'" Id.* at 533 (emphasis in original). There was testimony during the trial that the dogs were not aggressive and were not dangerous animals. At the conclusion of the trial, the jury found Collins guilty of involuntary manslaughter as well as the other charges of owning a dangerous animal. The Court of Appeals reversed the conviction and ordered a new trial based solely on the admission of the photographs, reasoning that the probative value of the challenged photos was substantially outweighed by their potential for unfair prejudice under Rule 403. *Id.*

In reversing the appellate court, the South Carolina Supreme Court acknowledged that: "The relevancy, materiality, and admissibility of photographs as evidence are matters left to the sound discretion of the trial court[]" and, *"[i]f the offered photograph serves to corroborate*

*testimony, it is not an abuse of discretion to admit it.*" *Id.* at 534 (quoting *State v. Nance*, 320 S.C. 501, 508, 466 S.E.2d 349, 353 (1996))(emphasis added). Although the Supreme Court's reasoning as set forth in its decision is lengthy, it is worth repeating here, in its entirety:

> Under our highly deferential standard of review, we conclude, contrary to the Court of Appeals, that the trial court did not abuse its wide scope of discretion in admitting the pre-autopsy photos. The Court of Appeals's obvious revulsion for the evidence, while certainly understandable, permeated its legal analysis. The evidence was highly probative, corroborative, and material in establishing the elements of the offenses charged; its probative value outweighed its potential prejudice; and the appellate court should not have invaded the trial court's discretion in admitting this crucial evidence based on its emotional reaction to the subject matter presented.
>
> Courts must often grapple with disturbing and unpleasant cases, but that does not justify preventing essential evidence from being considered by the jury, which is charged with the solemn duty of acting as the fact-finder. As one court has astutely observed, it is the duty of courts and juries to examine the evidence in even the most unpleasant of circumstances:
>
> > Courts and juries cannot be too squeamish about looking at unpleasant things, objects, or circumstances in proceedings to enforce the law and especially if truth is on trial. The mere fact that an item of evidence is gruesome or revolting, if it sheds light on, strengthens or gives character to other evidence sustaining the issues in the case, should not exclude it.
>
> *Nichols v. State*, 267 Ala. 217, 100 So.2d 750, 756 (1958) (citations omitted); *see also Camargo v. State*, 327 Ark. 631, 940 S.W.2d 464, 467 (1997) ("Even the most gruesome photographs may be admissible if they tend to shed light on any issue, to corroborate testimony, or if they are essential in proving a necessary element of a case, are useful to enable a witness to testify more effectively, or enable the jury to better understand [the] testimony. Other acceptable purposes are to show the condition of the victims' bodies, the probable type or location of the injuries, and the position in which the bodies were discovered." (internal citation omitted)).

Numerous jurisdictions have found that photos are not inadmissible merely because they are gruesome, especially where, as here, the photos simply mirror the unfortunate reality of the case. *See* M.C. Dransfield, Annotation, *Admissibility of Photograph of Corpse in Prosecution for Homicide or Civil Action for Causing Death*, 73 A.L.R.2d 769 (1960 & Later Case Serv.2013) (collecting cases involving death photos). As one court has stated, "The law is well settled that the mere fact that a photograph is gruesome is not a reason for its non admission." *State v. Ernst*, 150 Me. 449, 114 A.2d 369, 373 (1955).

*Moreover, the standard is not simply whether the evidence is prejudicial; rather, the standard under Rule 403, SCRE is whether there is a danger of __unfair prejudice that substantially outweighs the probative value of the evidence__. Where the State had the burden of proving the elements of the offenses charged and there were no eyewitnesses to the incident resulting in the victim's death, the photos here provided concrete evidence as to what transpired on that fateful day. We particularly note the photos were taken before the autopsy was conducted as a means to document the extent and nature of the victim's injuries. Thus, they show the unaltered condition of the victim, not any additional wounds that could have been made to the body by the pathologist in performing his examination.*

These are not ordinary dog bites with which most jurors would ever be familiar. Even the pathologist stated he felt compelled to document the injuries prior to the start of the autopsy because he had never come across a situation this extreme. Since there was no one else present at the time of the event, the photos aided the jury in evaluating the testimony offered by both the State and the defendant, especially as to determining the dangerous propensities of the dogs and whether or not Collins's conduct was criminally reckless.

*Id.* at 534-536 (italics added).

Similarly, *Turnipseed v. State*, 186 Ga.App. 278, 367 S.E.2d 259 (Ct. App. Ga. 1988), involved a case in which a defendant was convicted of felony involuntary manslaughter after a four-year old was mauled by defendant's pitbull terriers. In rejecting a claim that pre-autopsy photos of the victim lying on the autopsy table were unduly prejudicial, the Georgia Appellate Court held that a jury could find that the defendant's conduct of leaving the dogs unguarded,

along with his knowledge of past incidents involving the dogs, constituted the reckless conduct element needed to support an involuntary manslaughter charge. *Turnipseed* at pp. 262, 263.

In rejecting the defendant's claim that the pre-autopsy photographs of the victim were irrelevant and prejudicial, the appellate court found: "The photographs were not devoid of probative value because they showed the nature of the attack on the victim. From observation of the wounds of the victim, the jury could draw conclusions about the vicious propensities of the animals and weigh this in light of other evidence about the dogs to determine whether or not Turnipseed's conduct regarding them was criminally reckless." *Turnipseed* at p. 281 (citations omitted).[5]

Applying these principles to the instant case, the Court finds: (1) the defendant may be properly charged for "Assault" for both the injuries allegedly caused by him by punching the victim, as well as the injuries inflicted upon him by his dog, where, under the circumstances, the victim observed the dog aggressively bound towards him and despite asking Defendant to control his dog, Defendant failed to do so; and, (2) the photographs showing the victim's injuries, which the Defendant describes as "several lacerations, scabs, and redness"[6] are relevant

---

[5] The appellate court in *Turnipseed* denied the defendant's request for a jury instruction which required the jury to find that he knew of the dogs' propensity to attack people, as follows: "In order to find the Defendant guilty of reckless conduct in connection with his ownership of the dogs, I instruct you that you must find beyond a reasonable doubt that the Defendant knew of the dogs' propensity to do the particular act which caused the death in this case, that is, attack, bite and injure a small child. If the evidence does not establish beyond a reasonable doubt that the Defendant knew of the dogs' propensity to attack, bite and injure a child, you must return a verdict of not guilty." In refusing to find that the trial court erred in not giving this instruction, the appellate court found that the "foreseeability requirement" was not required to establish criminal liability under a "reckless" standard. *Turnipseed v. State*, 186 Ga. App. 278, 281, 367 S.E.2d 259, 262 (1988).

[6] Def's Mot. at 3.

to show Defendant's reckless conduct as well as the result of such reckless conduct, i.e., the injuries sustained by the victim as a result of his dog's attack.

Because the photographs are relevant to establishing Defendant's recklessness and would corroborate the victim's testimony, and, further, because they show lacerations, scabs and redness, as opposed to the photographs similar to those of the mauled children, the Court finds that the probative value of the photographs exceeds the prejudicial effect, if any, on Defendant under the circumstances. The Court shall, however, limit the number of photographs if deemed cumulative under Rule 403.

Regarding the authenticity of the photographs under Rule 901, the Court shall make that determination during the trial of this matter, during the testimony of the witness with knowledge of the photographs.

### 4. *Pinaula* is not relevant to establish prejudice to Tapar under Rule 403.

Defendant's reliance on *Pinaula* to support a finding that the dog bite evidence is overly prejudicial under 403 is misplaced. There, the Guam Supreme Court found that "propensity evidence" – evidence of Pinaula's pending cases and pretrial release status – "is substantially outweighed by the danger of unfair prejudice, particularly because the jury heard this evidence and may have improperly inferred a *propensity* for criminal conduct." *Pinaula* at ¶ 19 (emphasis added). Evidence that a defendant has a pending criminal case and is on pretrial release is *not* analogous to the instant case, where the question is whether the act of a dog, presumably owned or under the control of the Defendant, is attributable to the Defendant and, therefore, makes him criminally liable for the crime of Assault. The Court has already ruled, *supra*, that the Defendant may be charged with Assault for the injuries sustained from the dog bites.

**F.      CONCLUSION AND ASSERTED CRIMINAL TRIAL SCHEDULE**

Under the Assault charge, the Defendant may be held criminally liable for the actions of his dog resulting in injuries to the Victim. As such, the photographic (and other) evidence relating to the dog attack and injuries resulting therefrom is relevant to establish "recklessness" as an element of the crime of Assault.

For these reasons, the Defendant's Motion To Exclude Evidence Based on GRE 402, 403 and 901 is **DENIED.**

A **Criminal Trial Scheduling Order [Asserted]** shall be issued under separate cover. The Defendant, through counsel, agreed that the determination of the instant Motion tolls the running of his speedy trial clock. This Court, having now issued its Decision and Order DENYING Defendant's Motion, the Court must schedule the jury selection and trial of this matter within Eighteen (18) days pursuant to 8 GCA § 80.60.

**SO ORDERED** this _29th_ day of May, 2026.

HONORABLE MARIA T. CENZON
Judge, Superior Court of Guam